35 So.2d 621

**DAVIS v. STATE.**

**6 Div. 375.**

Court of Appeals of Alabama.
June 1, 1948.

Henry H. Mize, Jonas Spiro, Jr., and Mize & Spiro, of Tuscaloosa, for appellant.

A. A. Carmichael, Atty. Gen., and Thos. F. Parker, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

James Davis, this appellant, was found guilty of manslaughter in the first degree, under an indictment charging murder in the first degree, in that this appellant, before the finding of the indictment, "unlawfully and with malice aforethought killed Pete Lee by cutting him with a knife," etc.

The evidence presented in the trial below clearly establishes that on the night of Saturday, 13 July 1946, or in early morning of Sunday, 14 July 1946, this appellant stabbed Pete Lee with a knife. The affray occurred in a rural section of Tuscaloosa County.

At the conclusion of the State's case the defendant moved to exclude the State's evidence on the grounds, among others, that it had not been shown that Pete Lee was dead at the time the indictment against him was returned. This motion was denied by the trial court, and exception noted by the appellant to such ruling.

The appellant's written request for the general affirmative charge, submitted at the conclusion of all the evidence, was also refused.

Both of the above rulings are made grounds of defendant's motion for a new trial, which motion was denied by the lower court.

Rosa Lee Bell, who witnessed the affray, testified that after Lee had been stabbed or cut "blood skeeted out like water, and he weakened down."

This witness sought to minister to Lee throughout the night, and until an ambulance arrived about 9:30 the next morning. She rode to the hospital in the ambulance, and visited Lee twice during the day of his arrival.

In response to a question propounded to her as to whether she·saw Lee after he was dead she replied in the negative.

Rufus Parham, a witness for the State, and near whose home this rencounter took place, saw Pete Lee after he had been moved to the porch of "an old house across the creek." Lee had apparently been moved from the scene of the cutting to an old abandoned house that stood nearby at about daylight. When Parham saw Lee "he wasn't out of reason, but he was sick."

Mr. G. C. Walker, a deputy sheriff of Tuscaloosa County, arrived at the scene of the cutting shortly before the ambulance. When he observed Lee he was not bleeding much but "seemed to be very weak."

It is clear from the testimony of the above state witnesses that up to this point the state has failed to establish, first, that Lee died as a result of the wounds inflicted, and second, that if he died as a result of such wounds his death was prior to the return of the indictment against him on 6 August 1946, about three weeks after Lee was cut by this accused.

The Attorney General in his brief insists that both of these deficiencies in proof have been overcome by the testimony of Dr. S. T. Hardin, a qualified physician, and Coroner of Tuscaloosa County. In this connection the record discloses that Dr. Hardin testified as follows:

"Q. Dr. Hardin, did you examine a negro by the name of Pete Lee here some time prior to the 8th day of August, 1946? A. I don't know just what day, but anyway, I remember the 'Pete Lee,' and remember the name.

"Q. Where was he when you saw him? A. He was at Ford's Funeral Home."

After testifying as above Dr. Hardin then went on to testify that he had performed an autopsy on Lee's body, and determined that he had received a wound, from a sharp instrument, in the left part of his chest that penetrated about three inches into the chest cavity, and in the opinion of this expert witness Lee's death had resulted from this wound.

Thus while Dr. Hardin's testimony clearly establishes the fact of Lee's death, it falls far short of showing any facts from which the date of death could reasonably be inferred, or that it occurred prior to the return of the indictment on 6 August 1946. As we read Dr. Hardin's testimony he remembered only that he had examined the body of a negro named Pete Lee, and as to the date of the examination Dr. Hardin stated "I just don't know what day—." Without torturing a very plain statement, Lee's death remains undated so far as can be determined from the testimony of Dr. Hardin.

No additional light is thrown on the date of Lee's death by the testimony of any other witness, nor by any documentary evidence such as a death certificate. The evidence shows Lee was stabbed on 13-14 July 1946, and apparently severely wounded. He was removed to a hospital eight or ten hours later, and visited twice by Rosa Lee Bell on the day he was admitted to the hospital. At this point the trail ends. It appears again in the testimony of Dr. Hardin to the effect that Lee died from the wounds.

How long Lee may have lingered, or when he died, is not disclosed by the record.

A criminal prosecution covers offenses only which were committed before the prosecution was begun, and, when pertinent, within the statutory period of limitation. Two questions of time are involved (a) When was the offense committed, and, (b) When was the prosecution begun? The burden is on the State as to both. Richardson v. State, 215 Ala. 318, 111 So. 204.

In our opinion the State has failed to meet the burden cast on it to show that the offense, i. e. Lee's death, occurred prior to the return of the indictment upon which this case was tried. This point was protected by the record, and the court's rulings adverse to the appellant in this regard constituted error.

Reversed and remanded.